

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

_____

December 25, 2022

**SENT VIA ECF**
The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

*Re: United States v. Daquan Murphy, 21 Cr. 280 (AKH)*

Dear Judge Hellerstein:

In March 2020, our civilization shut down as COVID-19 viciously spread and became a worldwide pandemic. Our norm, as a society, would never be the same. People began to panic as we entered an unknown life-or-death situation. For many, employment came to a screeching halt, businesses closed forever, and those who lived paycheck to paycheck began to wonder how they would survive without an income, food, and/or shelter. Millions of individuals applied for unemployment and pandemic assistance. Sadly, some people took advantage of the opportunity to obtain assistance they were not eligible for—such is the case of Mr. Murphy.

Daqaun Murphy pleaded guilty to participating in a conspiracy to conduct the affairs of a racketeering enterprise, involving two (2) predicate acts of unemployment insurance fraud causing a loss of more than $40,000. Mr. Murphy takes responsibility for his conduct and seeks to be a better man, not only for himself but more importantly, for his girlfriend and two children. He admits his poor choices, mistakes, and shortcomings. Given the opportunity to be a better man, Mr. Murphy will prove he can be a good father, role model, provider, and law-abiding member of the community. He's accepted full responsibility for his conduct by entering a guilty plea and prays this Honorable Court will have mercy at the time of sentencing.

This sentencing memorandum is respectfully submitted to aid Your Honor in the sentencing of our client, Daquan Murphy, which is scheduled for January 3, 2023. The Plea Agreement stipulates to a Guidelines range of 41 to 51 months in prison. The PSR establishes a



325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

_____

Guidelines range of 46 to 57 months. However, the United States Probation Office recommends a sentence of 41 to 51 months in prison. Under the particular circumstances of this case, a sentence below 41 months in prison would be more than sufficient but not greater than necessary to fulfill the sentencing purposes set forth in 18 U.S.C. section 3553(a). Submitted below are factors for Your Honor to consider. The factors include the following: life experiences, the impact his sentence will have upon his family, the loss of employment due to incarceration, the recurrence of COVID and quarantine in the jails, and 24/7 lockdowns. This memorandum is submitted to aid the Court in determining a fair and reasonable sentence and to offer specific reasons as to why the Court should sentence Mr. Murphy below the sentencing guidelines.

**I.      The Plea Agreement**

On May 27, 2021, Daquan Murphy and others were charged in a twelve-count superseding indictment with conspiracy to commit racketeering and related offenses in connection with the racketeering enterprise described as "800 YGz." Notably, Mr. Murphy was not involved nor charged with acts of violence in Counts Two through Twelve. Pursuant to the written plea agreement dated May 12, 2022, Mr. Murphy pleaded guilty to Count One, racketeering conspiracy, in violation of 18 USC § 1962(d).

**II.     The Sentencing Guidelines**

As noted in the Plea Agreement, the Base Offense Level is the greater of 19 and the offense level applicable to the underlying racketeering activity, after the application of Chapter Three, Parts A, B, C, and D of the Guidelines. U.S.S.G. § 2E1.1. Pursuant to U.S.S.G. § 2B1.1(a)(1), the Base Offense Level for the underlying racketeering activity is 7 because the underlying offense(s) involved the submission of fraudulent unemployment insurance claims. Also, a 6-level increase is applied because the offense involved a loss of more than $40,000. Thus, the offense level applicable to the underlying racketeering activity is 13. U.S.S.G. § 2B1.1(b)(1)(D).

Pursuant to U.S.S.G. § 2E1.1, because 19 is greater than 13, the Base Offense Level is 19. Since Daquan Murphy clearly demonstrated an acceptance of responsibility, a two (2) level



325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

___

reduction is warranted in accordance with U.S.S.G. §3E1.1(a). Further, as a result of Mr. Murphy's timely notice of his intention to enter a plea of guilty, thereby eliminating the necessity of the Government's preparation for trial and efficiently reallocating the Court's resources, the Defense anticipates the Government will move at sentencing for an additional one-level reduction. U.S.S.G. §3E1.1(b). Therefore, taking into consideration the reductions, the Total Offense Level is 16.

### III.   Criminal History Category

Daquan Murphy is 34 years old. As detailed in the Plea Agreement, Mr. Murphy has a total of 12 criminal history points, which places him in Criminal History Category V. However, the Pre-Sentence Report calculates 14 criminal history points and designates Mr. Murphy to be a Criminal History Category VI. We believe the PSR calculations are correct.

**1. Youthful Offender Convictions**

Mr. Murphy has two (2) youthful offender adjudications, when he was 16 and 17 years old.

a. On March 30, 2005, Mr. Murphy was adjudicated in the Bronx County Supreme Court of attempted assault in the third degree, a Class A misdemeanor, in violation of NYPL § 110/120.00, and sentenced to a conditional discharge. Pursuant to USSG § 4A1.2(d), this sentence results in zero criminal history points.

b. On October 11, 2006, Mr. Murphy was adjudicated in the Bronx County Supreme Court of robbery in the third degree, a Class D felony, in violation of NYPL § 160.05, and sentenced to 5 years' probation, but resentenced to 1 year in jail on May 18, 2007. Pursuant to USSG § 4A1.1(b) and 4A1.2(d)(2)(A), this sentence results in two criminal history points.

**2. Misdemeanor Convictions**

Mr. Murphy has five (5) misdemeanor convictions and one (1) disorderly conduct offense.

a. On January 24, 2007, Mr. Murphy was convicted in the Bronx County Supreme



325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

_____

Court of petit larceny, a Class A misdemeanor, in violation of NYPL § 155.25, and sentenced to 1 year in jail.  Pursuant to USSG § 4A1.1(b) and 4A1.2(e)(2), this sentence results in two criminal history points.

  b. On January 24, 2007, Mr. Murphy was convicted in the Bronx County Supreme Court of criminal contempt in the second degree, a Class A misdemeanor, in violation of NYPL § 215.50, and sentenced to 30 days in jail.  Pursuant to USSG § 4A1.2(a)(2), this sentence results in zero criminal history points.

  c. On December 9, 2008, Mr. Murphy was convicted in the Bronx County Supreme Court of criminal possession of a weapon in the fourth degree, a Class A misdemeanor, in violation of NYPL § 265.01, and sentenced to 1 year in jail.  Pursuant to USSG § 4A1.1(b) and 4A1.2(e)(2), this sentence results in two criminal history points.

  d. On December 9, 2008, Mr. Murphy was convicted in the Bronx County Supreme Court of criminal possession of a weapon in the fourth degree, a Class A misdemeanor, in violation of NYPL § 265.01, and sentenced to 1 year in jail.  Pursuant to USSG § 4A1.1(b) and 4A1.2(e)(2), this sentence results in two criminal history points.

  e. On October 11, 2017, Mr. Murphy was convicted in Paramus Municipal Court of theft by deception, a misdemeanor, in violation of NJSA 2C:20-4, and sentenced to fines/costs.  Pursuant to USSG § 4A1.1(c) and 4A1.2(e)(2), this sentence results in two criminal history points.

  f. On July 26, 2021, Mr. Murphy pleaded guilty but was not convicted in the Bronx County Criminal Court of disorderly conduct, a violation and not a crime, in violation of NYPL § 240.20, and sentenced to 1 year conditional discharge.  Pursuant to USSG § 4A1.2(c)(1), this sentence results in zero criminal history points.

  **3. Felony Convictions**

Daquan Murphy has one (1) felony conviction.  On December 9, 2008, Mr. Murphy was convicted in the Bronx County Supreme Court of attempted criminal possession of a weapon in the third degree, a Class D felony, in violation of NYPL § 265.02, and sentenced to 2 years prison



325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

_____

and three years' supervised release. On April 8, 2018, Mr. Murphy was discharged from parole. Pursuant to USSG § 4A1.1(a) and 4A1.2(e)(2), this sentence results in three criminal history points.

**IV.     Criminal History Category: The Plea Agreement Is At Odds With the PSR**

The plea agreement assigns Mr. Murphy 12 criminal history points and a Criminal History Category V; however, the PSR assigns Mr. Murphy 14 criminal history points and a Criminal History Category VI.

According to the PSR, Mr. Murphy was adjudicated as a youthful offender in the Bronx County Supreme Court of robbery in the third degree, a Class D felony, in violation of NYPL § 160.05, and sentenced to 5 years probation, but resentenced to 1 year in jail on May 18, 2007. Pursuant to USSG § 4A1.1(b) and 4A1.2(d)(2)(A), this sentence results in two criminal history points because he was under 18 years of age, sentenced to at least sixty days of confinement, and released within five years of the commencement of the instant offense.

Therefore, the PSR correctly calculates his Criminal History Category to be VI, with an advisory Guidelines range of 46 to 57 months in prison.

**V.     Legal Framework For Sentencing**

As the Supreme Court has repeatedly explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Peugh v. United States*, 569 U.S. 530, 133 S. Ct. 2072, 2080 (2013) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). After correctly calculating the Guidelines range, the Court must next consider the statutory factors laid out at 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. at 49. A district court may not "presume that a sentence within the applicable Guidelines range is reasonable." *Nelson v. United St*ates, 129 S. Ct. 890, 892 (2009) (*per curiam*). Rather, sentencing courts, after calculating the appropriate Guidelines range, must consider the § 3553(a) factors, make an individualized assessment, and impose a



325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

_____

sentence that is "sufficient, but not greater than necessary" to meet the objectives of sentencing. *See* 18 U.S.C. § 3553(a); *Gall v. United States, supra*.

The § 3553(a) factors include, among other things:

a. the nature and circumstances of the offense and the history and characteristics of the defendant; [and]

b. the need for the sentence imposed:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . [and]

(E) to avoid unwarranted sentence disparities . . .

The defendant respectfully submits that taken together, the §3553(a) factors, in this case, weigh in favor of a downward variance.

### A. The 18 USC § 3553(a)(1) Factors

#### 1. Nature and Circumstances of the Offense

Daquan Murphy pleaded guilty to participating in a racketeering enterprise, by committing two acts of the submission of unemployment fraud insurance claims via Internet, which affected interstate and foreign commerce. Mr. Murphy takes full responsibility for his conduct. However, it should be noted that Mr. Murphy was not charged in Counts Two through Twelve involving acts of violence and/or drug trafficking.

#### 2. History and Characteristics of the Defendant

Daquan Emmanuel Murphy was born on November 16th, in the Bronx, to Flora Murphy and Daynon Denully. His parents were never married but resided in the same neighborhood. Ms. Murphy was only 17 years old when she gave birth to Daquan so he was raised



325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

_____

by his maternal grandparents, Mary and Herbert Staggers.  Daquan's father was mostly absent from his life due to drugs and frequent incarceration(s) in prison.  Daquan's mother went on to have four more children: Derik, 31 years old, and triplets, Diamond, Dominique, and Destiny, 25 years old.

### a. Emotional and Physical Disorders/Diseases

As a young child, Daquan Murphy developed asthma, which he suffers from to this day.  When Mr. Murphy was approximately 7 years old, he began to experience depression as a result of the lack of contact with his mother and father.  His daily visits with his mother became weekly then slowly deteriorated to monthly visits.  As his mother continued to withdraw from his life, his sadness became overwhelming and required his admission to the Bronx Lebanon Hospital for observation.  When he was released, he began outpatient treatment and therapy.

Daquan Murphy was also diagnosed with ADHD and had trouble maintaining his focus in the classroom, on homework, and maintaining appropriate behavior.  He was prescribed Ritalin, a central nervous system (CNS) stimulant used to treat ADHD and anxiety.[1]  Mr. Murphy attended Bronx Leadership Academy but transferred to Evander Childs High School where he was expelled due to behavior problems and incidents of acting out.  Mr. Murphy attended Columbus High School up to the 11th grade and dropped out of school.  Mr. Murphy hopes to earn his GED in the future.

In 2006, at 18 years old, Daquan Murphy was diagnosed with epilepsy and would suffer from seizures approximately two times per month.  He was prescribed Dilantin[2], which he took for many years, but learned relaxing and breathing techniques and eventually stopped taking the medication.

Growing up in a high-crime area in the Bronx proved to be very traumatic as well.  Mr. Murphy was only 8 years when he recalled hearing gunshots and first witnessed a neighbor

---

[1] *See Methylphenidate*, Wikipedia, https://en.wikipedia.org/wiki/methylphenidate.
[2] *See Phenytoin*, Wikipedia, https://en.wikipedia.org/wiki/phenytoin.



325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

_____

murdered on the sidewalk. Again, while a teenager, Mr. Murphy attended a BBQ where a fight broke out which led to a shootout among guests at the party. Mr. Murphy explains, "I was terrified and ran for my life." Through the years, Daquan Murphy witnessed other forms of violence and drug dealing on a daily basis in his neighborhood in the Bronx.

### b.    Substance Abuse

Despite his upbringing by his loving grandparents, Daquan Murphy has struggled with depression and drug addiction throughout his life. In part, because he believed his mother favored and loved his siblings more as she raised them herself and he was sent to live with his grandparents. This belief had a tremendous emotional effect on Mr. Murphy. He began consuming alcohol and marijuana every day beginning at the age of 13 years old. Mr. Murphy explains, "You could say I was an alcoholic." He's also abused prescription pain medications, including Percocet, Xanax, and Oxycontin.

Mr. Murphy attended four substance abuse programs. In 2006, Mr. Murphy was court-ordered to attend an outpatient program on 161st Street in the Bronx but violated the program. In 2010, Mr. Murphy was court-ordered to attend an outpatient program at Basics Drug Treatment and successfully completed the program.

Also, at the end of 2010, Mr. Murphy relapsed and attended an inpatient program for six months at Phoenix House in Brooklyn but did not successfully complete the program. Thereafter he attended Harlem East Life Plan where he successfully completed a six-month outpatient program.

### c.    Relationships and Children

From 2010 to 2020, Mr. Murphy was involved in a romantic relationship with Betty Harris which resulted in the birth of his son, Daquan Murphy, Jr., now 9 years old. Ms. Harris and Mr. Murphy grew apart and decided to end the relationship after 10 years. However, they maintain a good co-parenting relationship and Mr. Murphy is very involved in his son's life.



325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

_____

In 2020, Mr. Murphy began a romantic relationship Keisha Whitehead, with whom he resides, and this resulted in the birth of his daughter Dream, now 7 months old.

    **d.    Employment**

Since 2019, Mr. Murphy has been employed as a sanitation person at Interstate Waste Services and works 60 hours per week during the night shift. He earns $800 per week which is used to contribute to rent and support his girlfriend and two children.

From 2017 to 2019, Mr. Murphy was employed as a general laborer at Marion Laborers in the Bronx. He worked full-time and earned $16 per hour. He left this employment for a better opportunity at Interstate Waste Services.

From 2015 to 2019, Mr. Murphy was employed as a stock person at the Old Navy retail store in White Plains, New York. He worked part-time and earned $15 per hour but left this employment to seek a job closer to his home.

    **e.    Family Support**

Attached for the Court's review are three (3) letters of support on behalf of Daquan Murphy's family.[3] By all accounts, Mr. Murphy is a respectful man and a good father, but someone who has struggled his entire life.

His grandmother, Mary Murphy, describes Daquan as respectful, hard-working, and a loving father of two children. While growing up, she writes, he was very helpful around the house and showed much appreciation for taking care of him when his mother voiced that she was unwilling and/or unable to do so. She explains how much Daquan struggled with the knowledge his mother had other children that she cared for, and he continued to be cared for by his grandmother. She further describes her many conversations with Mr. Murphy wherein he expressed his feelings of shame and disappointment in himself for his misconduct in this case. He vows to do things differently to ensure he is present to raise his children. She asks this Honor Court for leniency at the time of sentencing.

---

[3] All letters are enclosed as Exhibit A, in the attachment labeled, "Letters In Support."



325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com
_____

Audrey Murphy, Mr. Murphy's aunt, describes her nephew as a kid who suffered from significant abandonment issues, yet always remained respectful towards his grandparents and extended family—despite his anger, resentment, and sadness.  As he grew older, Daquan focused on helping to make ends meet in the household.  Since becoming a father, she sees a positive change in Mr. Murphy which leads her to believe that "his purpose in life is to make sure that he [is present] in his children's lives."

Another aunt, Ralshiela Armstrong, was more like a sister due to her age of 11 years old when Daquan began living with his grandparents (her parents).  In fact, she describes how she was often left to care for Mr. Murphy while Mary Murphy worked 2 jobs to keep the family afloat.  She too has had numerous conversations with Daquan and feels that there's so much healing that needs to take place in his life due to childhood trauma.  But, she describes Daquan as an active parent in his children's lives and believes that raising them will contribute to his rehabilitation and healing process in his life as well.  She asks this Honorable Court for mercy.

### B.     The 18 USC § 3553(a)(2) Factors

This Court must also consider the factors listed in § 3553(a)(2) when imposing a sentence. Those factors include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment; to provide deterrence; to protect the public from further crimes of the defendant; to provide the defendant with any needed rehabilitative programs; and where appropriate, to avoid sentencing disparity.

The charge for which Mr. Murphy has been convicted is a very serious offense and there is no explaining that away.  However, it is respectfully submitted that Your Honor should not discount the fact that Mr. Murphy has suffered from significant childhood trauma, abandonment, and substance abuse throughout his entire life.  He also suffers from depression, asthma, epilepsy, and ADHD.  Indeed, these factors should be given consideration in deciding the appropriate sentence for Daquan Murphy.



325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com
_____

General and specific deterrence and respect for the law are among the factors a court must make in determining an appropriate sentence. As mentioned in our introduction, Mr. Murphy admitted to being an associate of the racketeering enterprise known as "YGZ" which operates mainly in New York City, but specifically in the Bronx. Mr. Murphy's brother, Derik Murphy, is a co-defendant in this case and is currently incarcerated. However, Mr. Murphy was released on bond, with restrictive conditions, and is not charged with acts of violence or drug trafficking. He admitted to participating in this conspiracy wherein he took advantage of the pandemic and submitted fraudulent claims for unemployment insurance causing a loss of more than $40,000. He was wrong and accepted responsibility for his illegal conduct.

We submit that Mr. Murphy is not a danger to the community as he works 60 hours per week and when not working, he's committed to spending time with his girlfriend and children. We also submit that Mr. Murphy has been on pretrial release for approximately 19 months without any violations whatsoever. On January 7, 2022, Pre-Trial Services Officer Ashley Cosme recommended that home detention and location monitoring be removed as conditions of his pre-trial release. The government deferred to this recommendation. Immediately thereafter, the Hon. Alison J. Nathan ordered these restrictive conditions be removed. *See* Dkt. 77.

Mr. Murphy would benefit from mental health, anger management, and substance abuse counseling. And, while incarceration for some offenses, of course, is a laudable goal for sentencing, counsel understands that this Court is not fooled by our prison system's inability to help its population—especially in terms of needed services and rehabilitation. Mr. Murphy will not receive proper medical care, therapy, and/or effective substance abuse treatment if incarcerated in a federal prison facility. We respectfully submit that an alternative to incarceration is appropriate in this case.

**VI.   Sentencing Analysis**

Choices have consequences. Daquan Murphy made a poor choice, admitted his guilt, and is ready to accept the consequences of his actions. Based upon the facts of this case, his history,



325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

_____

and his characteristics, Mr. Murphy plans to move in a positive direction, raise his children, and live a law-abiding life.  It is respectfully submitted that despite the advisory guideline range of 46 to 57 months imprisonment the appropriate sentence here is below the Guidelines and supervised release.  Thus, we respectfully submit that a sentence below the Guidelines is sufficient but not greater than necessary to satisfy the goals of the sentencing guidelines.

Your Honor's attention to this matter is greatly appreciated.

                                          Respectfully submitted,

                                          s/ Jacqueline E. Cistaro, Esq.